# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOBIQUITY, INC.,<br><br>     Plaintiff,<br><br>v.<br><br>MOBILEZAPP APPS, INC.,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. _____<br>)<br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT

Plaintiff Mobiquity, Inc. ("Mobiquity" or "Plaintiff") brings this action against Defendant MobileZapp Apps, Inc. ("MobileZapp" or "Defendant") for unfair competition, unfair and deceptive acts and practices, tortious interference with advantageous business relations, and unjust enrichment.  In support of its claims, Mobiquity alleges as follows:

## NATURE OF THE ACTION

1.      Mobiquity brings this action to protect its work, its reputation, and its goodwill. Mobiquity is in the business of providing mobile solutions to businesses in a variety of industries.  It has come to Mobiquity's attention, however, that MobileZapp is claiming credit on its website for mobile applications developed and created by Mobiquity.  In fact, MobileZapp has gone one step further:  it has taken images and text describing services and mobile applications from Mobiquity's website and used those images and text on MobileZapp's website. This conduct has and will continue to injure Mobiquity's reputation and standing in its industry.

## PARTIES

2.      Plaintiff Mobiquity, Inc. is a Delaware corporation with its principal place of business at 16 Laurel Avenue, Suite 300, Wellesley, Massachusetts 02481.  Mobiquity is in the

business of providing mobile solutions for its clients, primarily through designing and developing mobile applications ("apps").

3.     On information and belief, Defendant MobileZapp Apps, Inc. is a Texas corporation with its principal place of business at 100 Congress Avenue, Suite 2000, Austin, Texas 78702.  On information and belief, MobileZapp is in the business of marketing and selling mobile apps.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises "under the Constitution, laws, or treaties of the United States," specifically, the Lanham Act, 15 U.S.C. § 1125(a).  This Court also has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, which specifically vests this Court with subject matter jurisdiction over actions arising under the Lanham Act, "without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

5.     This Court has supplemental jurisdiction over Mobiquity's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims as to form part of the same case or controversy.

6.     This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district, and because the Defendant is subject to personal jurisdiction in this District.

4840-1845-3778.3

## FACTUAL BACKGROUND

### Mobiquity's Business

8.      Mobiquity takes a comprehensive, multiple-disciplinary approach to creating mobile solutions for its enterprise-class clients.  Mobiquity works with its clients to develop a mobile strategy that identifies the capabilities and technologies that will enhance each client's business.  Ultimately, Mobility develops custom mobile solutions, including apps, for its clients to implement their mobile strategy.

9.      Mobiquity designs and develops apps for a variety of platforms including Android, iOS, HTML5, tablet devices, iPads, and smartphones.  It also builds mobile websites for display on a variety of devices with varying screen sizes.

10.     Mobiquity offers comprehensive, in-house strategy, user experience and interface, architecture, analytics, development, and quality assurance services to its clients.

11.     On its website, MobileZapp represents that it also provides apps across a variety of platforms.  On its website, under the heading "Company" and subheading "About Us," MobileZapp boasts:  "The Mobilezapp development team is a world leader in mobile application software development.  Our team is amongst the brightest and most accomplished mobile app developers in the world…."

12.     On its website, under the heading "Services" and subheading "App Development," MobileZapp also boasts:  "Over the past five years we have developed some of the most respected and successful mobile apps on the market today. Each of these mobile apps have [*sic*] been proven and tested in the real-world environment."

13.     On information and belief, MobileZapp does not in fact provide the same breadth or depth of in-house services or app development work as Mobiquity.  Mobiquity and MobileZapp are, however, direct competitors with respect to the marketing and sale of apps.

3

## Mobiquity and MobileZapp's Prior Collaboration

14.     Despite being competitors, Mobiquity and MobileZapp previously agreed to collaborate on a single project:  the development of an app for TriNet Group, Inc. ("TriNet").  To effectuate their collaboration, Mobiquity and MobileZapp entered into a "Contractor Services Agreement" on or about October 26, 2011 (the "Agreement").

15.     The Agreement sets forth the broad terms under which Mobiquity was to provide MobileZapp with certain web design, app development, software development, animation, and production services.  The Agreement limits Mobiquity's services to any projects subsequently identified in separately executed "Statements of Work."

16.     Mobiquity and MobileZapp entered into only one "Statement of Work" pursuant to the Agreement.  That Statement of Work engaged Mobiquity for the design of an app for TriNet, which project was the impetus for entering into the Agreement in the first place.

17.     Mobiquity did in fact begin designing an app for TriNet in accordance with the Agreement and the accompanying Statement of Work.  Pursuant to the percentage fee structure set forth in the Statement of Work, Mobiquity invoiced MobileZapp $43,581 for services performed in connection with the design of the TriNet app.  MobileZapp, however, never paid the invoice.

18.     Three or four weeks into the project Mobiquity learned that MobileZapp was using another company to design the TriNet app.  With its invoice unpaid and knowledge of MobileZapp's collaboration with another development partner, Mobiquity ceased its work on the TriNet project.

19.     On information and belief, MobileZapp completed design of the TriNet app with the help of another developer or contractor.

4840-1845-3778.3

20.     The TriNet app is the only project on which Mobiquity and MobileZapp have ever agreed to collaborate.

## Mobiquity's Discovery of MobileZapp's False Advertising

21.     After the breakdown of the collaboration on the TriNet app, Mobiquity and MobileZapp went their separate ways.  Mobiquity continued to develop its business providing mobile solutions and developing apps.

22.     Among the projects Mobiquity is pursuing is a project to develop mobile solutions for Sallie Mae, Inc. ("Sallie Mae").  The Sallie Mae project includes design and development of two smartphone apps, including technical design of the apps to interface with Sallie Mae's existing back end systems; implementation and testing of the smartphone apps; and delivery of source code and technical documentation to Sallie Mae.

23.     The Sallie Mae project also has the potential to expand to include the design and development of a mobile website with attendant post-implementation enablement and training of Sallie Mae staff in building and supporting mobile apps.

24.     After providing a response to a Request for Proposal from Sallie Mae and several discussions, it appeared likely that Sallie Mae was prepared to move forward with engaging Mobiquity.

25.     As part of the discussions, however, Sallie Mae alerted Mobiquity to the fact that MobileZapp, on its website, claimed credit for several apps that Mobiquity had created. MobileZapp's claims raised concerns at Sallie Mae.  In particular, based on the questions that Sallie Mae has posed regarding MobileZapp's claims of authorship of several of Mobiquity's apps, Mobiquity believes that MobileZapp's false website claims have caused Sallie Mae to question the validity of Mobiquity's products and eroded the goodwill that Mobiquity had established with Sallie Mae.

4840-1845-3778.3

**<u>False Claims on MobileZapp's Website</u>**

26.     Having had its credibility questioned by Sallie Mae because of false claims on MobileZapp's website, Mobiquity undertook to review MobileZapp's website for claims that MobileZapp had developed apps that were actually developed by Mobiquity.

27.     Mobiquity discovered that MobileZapp has and continues to take credit for apps that were actually developed by Mobiquity.

28.     MobileZapp's unfair conduct, however, does not stop there; MobileZapp's website also contains images and large blocks of text copied directly from Mobiquity's website.

29.     MobileZapp has taken credit not only for Mobiquity's development projects, but also for its promotion of those projects.

30.     MobileZapp's theft begins with the description of its services.

31.     Mobiquity's website provides the following description of its "Mobile Application Strategy & Services":

> **Mobile Strategy**
>
> Is your company in the early stages of defining a mobile strategy? Have you deployed a few apps, but need a road map to tie them together? Are you in search of a solution that will be a real game-changing application?
>
> Our mobile strategists will show you how the innovative capabilities and vast range of mobile technology can propel your business. We'll map your business objectives to breakthrough mobile solutions, prioritize initiatives and create a mobile playbook for moving your organization forward.
>
> **User Experience Design**
>
> Imagine a world with all of the benefits of technology and none of its disadvantages. Where people don't think about the technology they work and play with, they just use it. That's what Mobiquity delivers. . . .

6

This practice area focuses on interface design. Through interviews and observational research we discover your customers' needs and translate them into effective and engaging interfaces that will drive your business.

**Mobile Development: Build, Deploy and Manage**

The real impact from mobility will not come from stand-alone apps or by using mobile as a way to access your website. . . .

http://mobiquityinc.com/services (as printed on January 8, 2013), attached hereto as Exhibit A1.

32.     MobileZapp's website contains a strikingly similar description, parts of which are taken verbatim from Mobiquity's website:

Is your organization in the early stages of defining your mobile strategy? Are you in need of a road map to tie together existing mobile apps? Are you seeking a game-changing application? Our mobile strategists will show you how the innovative capabilities and vast range of mobile technology can propel your business. We will map your business objectives to include breakthrough mobile solutions, prioritize initiatives and create a mobile playbook for moving your organization into the future.

UX - The User Experience - We deliver technology that works hard for people rather than technology that is hard to work. We focus on creating an interface design through questionnaires, interviews and observational research. We translate these into effective and engaging interfaces that will drive your business and make the consumer UX all that is can be.

Mobile Development - Build, Deploy and Manage - we focus on mobile strategy.

http://www.mobilezapp.com/services_mobile_consulting.html (as printed on January 8, 2013), attached hereto as Exhibit A2.

33.     MobileZapp's inappropriate conduct, moreover, is not limited to stealing descriptions of services from Mobiquity.

34.     Mobiquity created an app called "Little Angels" based on the animated series of the same name.  Little Angels is a subsidiary of Hearst Publishing.

4840-1845-3778.3

35.     Next to screenshots of the Little Angels app, Mobiquity's website provides background on the Little Angels franchise and Hearst Publishing's goals in having such an app created.  Mobiquity describes its mobile solution as follows:

> We designed, built, and deployed an interactive game based on the Little Angel's characters. What could be more fun for kids than playing games and activities with their new angel friends? And what could be more pleasing for parents than knowing their children will learn valuable lessons through morality-based characters and teachings? The Little Angels App both teaches and entertains.
>
> Players can start each day with the Daily Prayer— read by Roma Downey – and featuring illustrations and interactive scenes from the Little Angels videos.
>
> Also included are games like Uri's Painting Game— where little ones will be thrilled as they color and paint images from the Little Angels videos. The Matching Game challenges kids' memory as they search for their beloved angels hiding behind clouds.

http://mobiquityinc.com/work/portfolio/romas-little-angels (as printed on January 8, 2013), attached hereto as Exhibit B1.

36.     MobileZapp, however, claims credit on its website for having created Little Angels.  MobileZapp also took screenshots of the Little Angels app from Mobiquity's website and pasted them on its own website.  MobileZapp even copied – verbatim – Mobiquity's description of the app:

> We designed, built, and deployed an interactive game based on the Little Angel's characters. What could be more fun for kids than playing games and activities with their new angel friends? And what could be more pleasing for parents than knowing their children will learn valuable lessons through morality-based characters and teachings? The Little Angels App both teaches and entertains.
>
> Players can start each day with the Daily Prayer— read by Roma Downey – and featuring illustrations and interactive scenes from the Little Angels videos.

4840-1845-3778.3

> Also included are games like Uri's Painting Game— where little
> ones will be thrilled as they color and paint images from the Little
> Angels videos. The Matching Game challenges kids' memory as
> they search for their beloved angels hiding behind clouds.

http://www.mobilezapp.com/apps-littleangels.html (as printed on January 8, 2013),

attached hereto as Exhibit B2.

37.     Mobiquity also developed an app called SAP SafetyMate.  As with Little Angels,

Mobiquity's website provides background on the client and what it sought to accomplish.

Mobiquity describes the Challenge and Solution as follows:

> The Challenge
> Every year in America, four million people fall victim to a
> workplace injury. The cost is phenomenal in terms of human
> suffering and lost productivity. It's imperative that companies
> provide a safe, accident-free environment for employees.
>
> What happens when a supervisor making his rounds at a chemical
> plant finds a puddle of brown goo on the floor? In and of itself, the
> puddle is a slip-and-fall hazard. But what if it is toxic and when
> inhaled, scorches the throat and sends 20 people to the ER? The
> problem needs to be addressed immediately and correctly.
>
> SAP had developed cost-effective environmental, health and safety
> (EHS) solutions to reduce risks and improve safety while easily
> complying with government regulations. It partnered with
> Mobiquity to extend this application on mobile devices.
>
> The Solution
> The SafetyMate app for iPads and smartphones ushers in a new era
> for safety. It is set up with reminders—wear proper equipment—
> the ability to communicate fast and easily with others in the
> workplace and even translates voice messages into text, which will
> then be emailed to the right person.

http://mobiquityinc.com/work/portfolio/sap-safetymate (as printed on January 8, 2013),

attached hereto as Exhibit C1.

38.     On its website, MobileZapp claims credit for the creation of the SAP SafetyMate app – work actually done by Mobiquity.  MobileZapp provides the following description of SAP SafetyMate on its website:

> The SafetyMate app for iPads and smartphones ushers in a new era for safety. It is set up with reminders—wear proper equipment—the ability to communicate fast and easily with others in the workplace and even translates voice messages into text, which will then be emailed to the right person.
>
> The Challenge
> Every year in America, four million people fall victim to a workplace injury. The cost is phenomenal in terms of human suffering and lost productivity. It's imperative that companies provide a safe, accident-free environment for employees.
>
> SAP had developed cost-effective environmental, health and safety (EHS) solutions to reduce risks and improve safety while easily complying with government regulations. ***It partnered with Mobiquity to extend this application on mobile devices.***
>
> The Solution
> The SafetyMate app for iPads and smartphones ushers in a new era for safety. It is set up with reminders—wear proper equipment—the ability to communicate fast and easily with others in the workplace and even translates voice messages into text, which will then be emailed to the right person.

http://www.mobilezapp.com/apps-safetymate.html (as printed on January 8, 2013, emphasis added), attached hereto as Exhibit C2; see also

http://www.mobilezapp.com/sap_portfolio_landing.html (as printed on January 8, 2013), attached hereto as Exhibit C3.

39.     As in the case of Little Angels, MobileZapp has claimed credit for developing the SAP SafetyMate app, which is actually the fruit of Mobiquity's labor.  Once again, MobileZapp copied screenshots and verbatim text from Mobility's website, to convey falsely that MobileZapp is the true developer.  Moreover, as if MobileZapp's conduct was not brazen enough, MobileZapp's stolen description of SAP SafetyMate still includes *Mobiquity's* name,

4840-1845-3778.3

and one of the SAP SafetyMate screenshots MobileZapp stole from Mobiquity's website clearly

shows *Mobiquity's* corporate logo.  See Exhibit C2.

40.    MobileZapp also claims credit for Mobiquity's development of the Buildium app.

While, in the case of Buildium, it appears that MobileZapp did attempt to create its own

descriptions, the screenshots of the app are copied from Mobiquity's website.  See

http://mobiquityinc.com/work/portfolio/buildium (as printed on January 8, 2013), attached hereto

as Exhibit D1; http://www.mobilezapp.com/apps-buildium.html (as printed on January 8, 2013),

attached hereto as Exhibit D2.

41.    MobileZapp also claims to have created an app for Weight Watchers, but that app

too was developed by Mobiquity.  At Weight Watchers' request, Mobiquity removed

information regarding the development of that app from its website, and yet, ironically,

MobileZapp's false claims to have developed the app continue to exist on its website.

42.    Mobiquity and MobileZapp do not have and have never had an agreement for the

development of the Little Angels, SAP SafetyMate, Buildium, or Weight Watchers apps.  None

of those apps falls within the scope of the Agreement or any Statement of Work thereto.

43.    MobileZapp's brazen conduct also extends to another developer, KMDM, which

Mobiquity acquired in 2011.  On its website, MobileZapp claims to have developed the Crackle,

Concentrica, Powwow Now, Talentastic, Where, and York Hospital apps.  Development work on

those apps, however, was performed by KMDM – not MobileZapp.

44.    In fact, KMDM has never had any development relationship, or indeed even a

written agreement, with MobileZapp.  The extent of KMDM and MobileZapp's relationship

consists of one discussion between them about becoming marketing partners, after which

11

KMDM paid MobileZapp $10,000.  MobileZapp, however, never delivered the promised marketing leads or any other value to KMDM in exchange for that payment.

### Irreparable Harm to Mobiquity

45.     MobileZapp's misconduct in taking credit for apps developed by Mobiquity, and its use of images and text from Mobiquity's website, have caused Mobiquity immediate, continuing, and irreparable harm.

46.     As explained above, MobileZapp's false advertising prompted Sallie Mae to question Mobiquity's integrity and has jeopardized what was, to Mobiquity's knowledge and belief, Sallie Mae's probable consummation of an agreement with Mobiquity.

47.     MobileZapp's false advertising of Mobiquity's work as its own harms Mobiquity's reputation and goodwill with its current and prospective clients.

48.     As with Sallie Mae, MobileZapp's false advertising is likely to cause prospective clients of Mobiquity to question Mobiquity's credibility and to be reluctant to enter into agreements with Mobiquity.

49.     In fact, MobileZapp may already have inappropriately secured new clients, to Mobiquity's detriment, by falsely advertising Mobiquity's work as its own.

### COUNT I
### FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION

50.     Mobiquity restates and realleges the allegations in Paragraphs 1 to 49 as if fully set forth herein.

51.     By the conduct as alleged herein, MobileZapp has falsely suggested that apps created and developed by Mobiquity were created and developed by MobileZapp.

52.     MobileZapp's conduct as alleged herein is likely to cause confusion or mistake, or to cause deception among purchasers or prospective purchasers by falsely suggesting that

Mobiquity is affiliated with, connected with, or otherwise legitimately associated with MobileZapp.

53.     MobileZapp's conduct as alleged herein is likely to cause confusion or mistake, or to cause deception among purchasers or prospective purchasers by falsely suggesting that Mobiquity sponsors or endorses MobileZapp, its products, its business, or its commercial activities.

54.     MobileZapp's conduct as alleged herein is likely to cause confusion or mistake, or to cause deception among purchasers or prospective purchasers by falsely suggesting that work product and services provided by Mobiquity were actually provided by MobileZapp.

55.     MobileZapps' conduct as alleged herein constitutes, *inter alia*, false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

56.     As a result of MobileZapp's conduct, Mobiquity has suffered detriment to its business, goodwill, and reputation, all to its damage in an amount to be proven at trial.

57.     Additionally, on information and belief, MobileZapp has derived unlawful gains and profits as a result of its unlawful acts, thereby further damaging Mobiquity.

58.     If the above-described acts are permitted to continue, Mobiquity will sustain further loss and damage, and irreparable injury, for which Mobiquity has no adequate remedy at law.

## COUNT II
## UNFAIR AND DECEPTIVE ACTS AND PRACTICES
## IN VIOLATION OF MASS. GEN. LAWS c. 93A, §§ 2 and 11

59.     Mobiquity restates and realleges the allegations in Paragraphs 1 to 58 as if fully set forth herein.

60.     Mobiquity and MobileZapp are each involved in trade or commerce within the meaning of Mass. Gen Laws c. 93A.

61.     MobileZapp's conduct described herein, including, *inter alia*, MobileZapp's wrongful claims that it developed apps in fact developed by Mobiquity and its use of images and text from Mobiquity's website, constitutes unfair and deceptive business practices within the meaning of Mass. Gen. Laws c. 93A, §§ 2 and 11.

62.     MobileZapp's wrongful conduct occurred primarily and substantially in the Commonwealth of Massachusetts.

63.     As a result of MobileZapp's violation of Mass. Gen. Laws c. 93A, §§ 2 and 11, Mobiquity has suffered and will continue to suffer irreparable harm and monetary damages in an amount to be proven at trial.

64.     MobileZapp's wrongful conduct has been willful and/or knowing.  MobileZapp is therefore liable, under Mass. Gen. Laws c. 93A, §§ 2 and 11, to Mobiquity in an amount equal to not less than twice and up to three times Mobiquity's damages by reason of its violations of Mass. Gen. Laws c. 93A, § 2.

65.     Mobiquity is also entitled to an award of reasonable attorneys' fees and costs incurred in this action as a result of MobileZapp's violation of Mass. Gen. Laws c. 93A, § 2.

<u>COUNT III</u>
<u>COMMON LAW UNFAIR COMPETITION</u>

66.     Mobiquity restates and realleges the allegations in Paragraphs 1 through 65 as if fully set forth herein.

67.     This claim arises under the common law of the Commonwealth of Massachusetts.

68.     MobileZapp's conduct as alleged herein constitutes a knowing and willful violation of the common law of unfair competition in the Commonwealth of Massachusetts.

14

4840-1845-3778.3

69.     MobileZapp's acts of unfair competition have caused damage and irreparable harm to Mobiquity.

70.     Unless enjoined, MobileZapp will continue to compete unfairly with Mobiquity in violation of the common law, causing continued and irreparable harm to Mobiquity.

## COUNT IV
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

71.     Mobiquity restates and realleges the allegations in Paragraphs 1 through 70 as if fully set forth herein.

72.     Mobiquity has had advantageous business relationships with its current and prospective clients.

73.     MobileZapp tortuously interfered with Mobiquity's advantageous business relationships with its current and prospective clients by claiming Mobiquity's work as its own and appropriating images and text from Mobiquity's website as its own.

74.     MobileZapp's conduct was intentional and was improper in means or motive.

75.     As a result of MobileZapp's conduct, Mobiquity's advantageous relationships with its current and prospective clients have been, and continue to be, damaged.

76.     MobileZapp's tortious interference has directly and proximately caused Mobiquity's damages, and Mobiquity has suffered and continues to be threatened with irreparable harm.

## COUNT V
## UNJUST ENRICHMENT AND RESTITUION

77.     Mobiquity restates and realleges the allegations in Paragraphs 1 through 76 as if fully set forth herein.

4840-1845-3778.3

78.     Through its improper conduct, *inter alia*, in claiming that apps developed by Mobiquity were developed by MobileZapp, MobileZapp has, on information and belief, obtained profits to which it was not entitled.

79.     It would be unjust for MobileZapp to retain those ill-gotten gains.

80.     Justice and equity entitle Mobiquity to recovery and restitution for MobileZapp's unjust enrichment in an amount to be proven at trial.

## COUNT VI
## ACCOUNTING

81.     Mobiquity restates and realleges the allegations in Paragraphs 1 through 80 as if fully set forth herein.

82.     Mobiquity is entitled to a complete and accurate accounting of all revenues resulting from MobileZapp's false claims that it developed apps that were developed by Mobiquity.

## COUNT VII
## CONSTRUCTIVE TRUST

83.     Mobiquity restates and realleges the allegations in Paragraphs 1 through 82 as if fully set forth herein.

84.     Mobiquity is entitled to have the Court impose a constructive trust for the benefit of Mobiquity on all revenues generated from MobileZapp's false claims that it developed apps that were developed by Mobiquity.

WHEREFORE, Plaintiff Mobiquity, Inc. respectfully requests that the Court:

i.     Enter a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining MobileZapp, its officers, directors, agents,

4840-1845-3778.3

services, employees, attorneys, and all persons in active concert or participation

with them during the pendency of this action and thereafter perpetually from:

     a.     Featuring or otherwise listing apps developed by Mobiquity, or the

associated Mobiquity customers, on or in MobileZapp's website,

brochures, or other advertising or promotional materials or

communications;

     b.     Copying or using, in whole or in part, images or text from

Mobiquity's website on or in MobileZapp's website, brochures, or other

advertising or promotional materials or communications; and

     c.     Representing in any way that MobileZapp created or developed

apps that were created by Mobiquity;

ii.     Enter judgment in favor of Mobiquity on all counts of this Verified

Complaint;

iii.     Award Mobiquity damages on all counts of this Verified Complaint and

interest at the statutory rate of 12% per annum;

iv.     Award Mobiquity profits made by MobileZapp as a result of

MobileZapp's wrongful conduct;

v.     Award Mobiquity an accounting of all profits made by MobileZapp as a

result of MobileZapp's wrongful conduct;

vi.     Award Mobiquity restitution for all profits made by MobileZapp as a

result of MobileZapp's wrongful conduct;

vii.     Impose a constructive trust on all profits made by MobileZapp as a result

of MobileZapp's wrongful conduct;

4840-1845-3778.3

viii.     Award treble damages to Plaintiffs as provided by Mass. Gen. Laws

c. 93A, § 11, for Defendant's violations of Mass. Gen. Laws c. 93A, § 2; and

ix.     Award such other and further relief as this Court deems just and proper.

<div style="margin-left:40%">

Respectfully submitted,

MOBIQUITY, INC.,

By its attorneys,

/s/ Roger A. Lane
Roger A. Lane (BBO# 551368)
Courtney Worcester (BBO# 643180)
Michael Thompson (BBO# 673497)
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Telephone: (617) 342-4000
Fax: (617) 342-4001
rlane@foley.com
cworcester@foley.com
mxthompson@foley.com

</div>

Dated:  January 10, 2013

4840-1845-3778.3

## VERIFICATION

I hereby verify that I have read the allegations set forth in the foregoing Verified

Complaint and that such allegations are true to the best of my knowledge, information and belief.

By: _____

David Micalizzi
Vice President, Client Services
Mobiquity, Inc.

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF NORFOLK

Personally appeared before me, this 10th of January, 2013, David Micalizzi and made solemn oath that the statements made above are true and accurate to the best of his knowledge and belief.

_____
Notary Public/Justice of the Peace

NIRUKSHI S. BOGAMUWA
Notary Public
Commonwealth of Massachusetts
My Commission Expires March 5, 2015

4840-1845-3778.3